01

02

03

04

05

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

06

07   HAROLD EUGENE HIGGINS,              )
                                         )
08          Petitioner,                  )   CASE NO. 2:06-cv-02192-RAJ-JLW
                                         )
09          v.                           )
                                         )
10   ANTHONY HEDGPETH, Warden,           )   REPORT AND RECOMMENDATION
                                         )
11          Respondent.[1]               )
     _____ )

12

13          I.      INTRODUCTION

14          Petitioner is a California prisoner who is currently incarcerated at the Salinas Valley

15   State Prison, in Soledad, California.  (*See* Docket 34.)  He was convicted by a jury of seven

16   counts of child molestation of two or more victims, with substantial sexual conduct, in

17   Sacramento County Superior Court on October 19, 2004, and sentenced to thirty-two years to

18   life in prison.  (*See* Dkt. 26 at 1-2.)  Petitioner has filed an amended petition under 28 U.S.C.

19   § 2254 challenging the constitutionality of his conviction on eleven grounds.  (*See* Dkt. 10.)

20   Respondent has filed an answer to the amended petition, together with relevant portions of the

21   _____

22          [1] Because Anthony Hedgpeth is currently the warden at the institution in which petitioner is
     incarcerated, the Court has substituted his name for that of the original respondent, James Yates.  *See*
     Federal Rule of Civil Procedure 25(d).  (*See* Docket 34.)

REPORT AND RECOMMENDATION - 1

01  state court record, and petitioner has filed a traverse in response to the answer.  (*See* Dkts. 26

02  and 29.)  The briefing is now complete and this matter is ripe for review.  The Court, having

03  thoroughly reviewed the record and briefing of the parties, recommends the Court deny the

04  petition, and dismiss this action with prejudice.

05      II.   FACTS AND PROCEDURAL HISTORY

06          The following facts are taken from the California Court of Appeal's April 7, 2006,

07  opinion.  (*See* Dkt. 28, Lodged Docket 3.)  The state court's findings of fact are presumed

08  correct unless petitioner rebuts that presumption with clear and convincing evidence.  *See* 28

09  U.S.C. § 2254(e)(1); *Davis v. Woodford,* 384 F.3d 628, 638 (9th Cir. 2004).  Petitioner has

10  not overcome the presumption with respect to any of the following facts.  This Court therefore

11  relies on the state court's recitation.

12
13          An information charged defendant with two counts of lewd and
          lascivious acts upon a minor and five counts of lewd and
14          lascivious acts on a child under the age of 14. The information
          also alleged defendant committed the offenses against two or
15          more victims. . . . Defendant entered a plea of not guilty to all
          counts. The district attorney dismissed one of the counts of
          lewd and lascivious acts on a minor.

16          The alleged victims of the charged conduct were related to
17          defendant's wife.  In 2003 the wife's son and his wife relocated
          from Indiana to California. Their children included their
18          adopted daughter, S., who was then 14 years old.  In California,
          S. and her family stayed in defendant's home while their new
19          home was being built. S., who had previously met defendant
          and his wife when they visited in Indiana, referred to defendant
20          as "grandpa."

21          The day after their arrival in California, S. took a shower.  She
          dressed and joined her siblings, who were watching television
22          in the living room. S. sat on the couch next to defendant.
          Defendant put his arm around S., reached down inside her

shorts, and rubbed the outside of her vagina. When S.'s father entered the room, defendant stopped.

The following day, S., her family, and defendant and his wife took a car trip to Lake Tahoe.  S. lay down on defendant's lap. He took her hand and placed it next to his penis. S. told her father about both incidents the next day.

S.'s sister D. was in born in 1991.  In 2003, while her family stayed at defendant's house, D. accompanied defendant outside as he smoked his pipe. Defendant put his arm around D. and said: "Let's see what's down here" and tried to stick his hand down her pants. D. pushed his hand away, but defendant was able to touch her lower stomach.  Defendant persisted for a few moments and then stopped.

Prior to their move, defendant and his wife had visited D.'s family in Indiana. During those visits, defendant frequently grabbed D.'s chest. Once, when D. wore a shirt that said "Genuine Girl," defendant grabbed her chest and said, "Let's see if you really are genuine."

After S. told their father about defendant's actions, D. also told him about what defendant had done. Their father removed the family from defendant's home immediately.

D.M., born in 1995, is S. and D.'s cousin.  Defendant is his grandfather. D.M. and his mother lived in defendant's home while he attended first grade.  D.M. was seven years old in first grade.

Over a five-month period, defendant sexually molested D.M. at night on several occasions. Defendant would touch D.M.'s penis and scrotum as he tried to sleep. Defendant touched D.M.'s penis and scrotum with his hands and mouth.  During the molestations, D.M. would turn over to make defendant stop. D.M. finally told his mother about defendant's actions just prior to their moving to Bakersfield.

Two victims, E. and S.S., provided evidence of uncharged acts pursuant to Evidence Code section 1108. E. is D.M.'s half-sister, but they did not live together. E. considered defendant her grandfather.

REPORT AND RECOMMENDATION - 3

01

02

03

04

05

06

07

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

When E. was four years old, she visited defendant's home.[2] As she was changing her clothes, and while she was naked, defendant took her into his room. He sat her on his bed and touched her on the outside of her vagina with his hand.  E. told defendant it hurt and defendant got some lotion and began rubbing her vagina again.  Defendant told E. it was a secret and so she told no one.

During another incident, defendant rubbed his penis on top of E.'s vagina, causing skin contact.  Later, at preschool, a teacher found E. on top of a boy. When the teacher asked what she was doing, E. told her that was what she and defendant did.  E. then told her father and the police about the incident.

S.S., born in 1955, is defendant's niece.  When S.S. was a child, defendant lived with her family. When S.S. was six, she was in the back of a flatbed truck on a trip from Los Angeles to Bakersfield.  Her two brothers and defendant were also in the truck.

While S.S. tried to sleep, defendant moved to lie down with her. He put his hand under her nightgown, pulled her underwear to one side, and put his fingers in her vagina.  S.S. felt pressure and pain. Defendant told her, "You are Uncle Harold's little precious princess. You are my girl." S.S. squeezed her legs together and moaned in an attempt to stop defendant. Defendant stopped when her brothers, who were unaware of the molestation, attracted his attention.

Eight months to a year later, S.S. told her mother. Her father refused to believe his brother was capable of such conduct and labeled S.S. a liar.

On another occasion, defendant came to S.S.'s home for a family gathering. While pushing S.S. on a swing, he squeezed her breasts. Again, defendant told her: "You are Uncle Harold's little precious princess. You are my girl."  S.S. ran and hid until defendant left. She then told her mother about the incident. When S.S. heard about the more recent molestation allegations, she reported these prior incidents to the district attorney.

---

[2] At the time of trial, E. was 13 years old.

The defense presented testimony of Jaylene Higgins, defendant's wife. Married since 1989, they moved to Sacramento in 1993. Although the couple had no children together, Jaylene has two children from a prior relationship.

Jaylene testified no one ever mentioned anything unusual between defendant and any of his grandchildren. Nor did Jaylene witness any untoward behavior.  Neither D. nor S. ever said anything to her about inappropriate behavior by defendant. Defendant quit smoking a pipe in 2002. However, Jaylene admitted she was not in the house when S. alleged defendant put his hand down her pants.

According to Jaylene, before S. made her accusations, she was upset about being forced to give up her relationship with her biological mother in Indiana. Prior to her accusations, S.'s father angrily confronted her about her reluctance to move. Jaylene testified that S.'s father initially told Jaylene not to confront defendant about the allegations, since it was probably a misunderstanding. Jaylene told defendant, who asked S.'s father if there was a problem. S.'s father exploded and threatened to kill defendant, and defendant asked them to leave.

Jaylene confronted defendant in 1995 about E.'s accusation. Defendant denied molesting her.

Jaylene also admitted D.M. stayed with them occasionally.  She testified that whenever D.M. stayed over she put him to bed, and she was always with defendant afterwards.  Jaylene also testified she slept lightly and knew defendant never left the bedroom at night. D.M. never consistently slept in the house. Instead, he slept outside in a trailer with his mother.

On rebuttal, Deputy Ramona Feuillard testified regarding her interview with defendant over the allegations.  Feuillard stated defendant told her D.M. stayed with them a lot and slept in Jaylene's mother's room. Defendant denied committing any of the charged offenses.

Defendant testified on surrebuttal. He denied telling Feuillard that D.M. stayed with him a lot. Defendant told Feuillard that D.M. stayed with them occasionally. He denied going into D.M.'s bedroom and putting his mouth on D.M.'s penis.

REPORT AND RECOMMENDATION - 5

01      Defendant denied doing anything inappropriate with S. or D.
     He admitted telling Feuillard he might have touched S., but he
02      couldn't be sure because he had fallen asleep next to her.
     Defendant denied doing anything inappropriate to S.S.

03

04 (Dkt. 28, LD 3 at 1-7.)

05   The jury found defendant guilty on all counts and found the allegations all true. (*See*

06 *id.*, LD 7 at 560-72.) "The trial court sentenced defendant to 32 years: the middle term of two

07 years on count one, plus 15 years to life on counts two and three . . . to be served

08 consecutively. The court also sentenced defendant to 15 years to life each on counts four

09 through six, to be served concurrently." (*Id.*, LD 3 at 7.)

10   With the assistance of counsel, petitioner timely appealed his judgment and sentence

11 to the California Court of Appeal. (*See id.*, LD 1.) The California Court of Appeal denied

12 petitioner's claim in a reasoned decision, and affirmed the Sacramento County Superior

13 Court's judgment on April 7, 2006. (*See id.*, LD 3.) Petitioner filed a petition for review in

14 the California Supreme Court, which was summarily denied on June 21, 2006. (*See id.*, LD 4

15 and 5.)

16   Petitioner filed his initial federal habeas petition in this Court on September 6, 2006.

17 (*See* Dkt. 1.) By Court Order, petitioner filed an amended petition on November 21, 2006.

18 (*See* Dkts. 9 and 10.) In his Answer, respondent admits petitioner timely filed his appeal and

19 exhausted what he characterizes as petitioner's "claims 3 through 9." (*See* Dkt. 26 at 2.) He

20 contends, however, that petitioner failed to exhaust his first two federal claims for relief. (*See*

21 *id.*)

22

REPORT AND RECOMMENDATION - 6

01        III.    STANDARD OF REVIEW

02        The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this

03   petition because it was filed after the enactment of AEDPA.  *See Lindh v. Murphy*, 521 U.S.

04   320, 326-27 (1997).  Because petitioner is in custody of the California Department of

05   Corrections pursuant to a state court judgment, 28 U.S.C. § 2254 provides the exclusive

06   vehicle for his habeas petition.  *See White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004)

07   (providing that § 2254 is "the exclusive vehicle for a habeas petition by a state prisoner in

08   custody pursuant to a state court judgment. . . .").  Under AEDPA, a habeas petition may not

09   be granted with respect to any claim adjudicated on the merits in state court unless petitioner

10   demonstrates that the highest state court decision rejecting his petition was either "contrary to,

11   or involved an unreasonable application of, clearly established Federal law, as determined by

12   the Supreme Court of the United States," or "was based on an unreasonable determination of

13   the facts in light of the evidence presented in the State court proceeding."  28 U.S.C.

14   § 2254(d)(1) and (2).

15        As a threshold matter, this Court must ascertain whether relevant federal law was

16   "clearly established" at the time of the state court's decision.  To make this determination, the

17   Court may only consider the holdings, as opposed to dicta, of the United States Supreme

18   Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000).  It is also appropriate to look to

19   lower federal court decisions to determine what law has been "clearly established" by the

20   Supreme Court and the reasonableness of a particular application of that law.  *See Duhaime v.*

21   *Ducharme*, 200 F.3d 597, 598 (9th Cir. 1999).  In this context, Ninth Circuit precedent

22

REPORT AND RECOMMENDATION - 7

01  remains persuasive but not binding authority.  *See Williams*, 529 U.S. at 412-13; *Clark v.*

02  *Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

03         The Court must then determine whether the state court's decision was "contrary to, or

04  involved an unreasonable application of, clearly established Federal law."  *See Lockyer v.*

05  *Andrade*, 538 U.S. 63, 71 (2003).  "Under the 'contrary to' clause, a federal habeas court may

06  grant the writ if the state court arrives at a conclusion opposite to that reached by [the

07  Supreme] Court on a question of law or if the state court decides a case differently than [the]

08  Court has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 412-13.

09  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the

10  state court identifies the correct governing legal principle from [the] Court's decisions but

11  unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  At all

12  times, a federal habeas court must keep in mind that it "may not issue the writ simply because

13  [it] concludes in its independent judgment that the relevant state-court decision applied clearly

14  established federal law erroneously or incorrectly.  Rather that application must also be

15  [objectively] unreasonable."  *Id.* at 411.

16         In each case, the petitioner has the burden of establishing that the state court decision

17  was contrary to, or involved an unreasonable application of, clearly established federal law.

18  *See* 28 U.S.C. § 2254; *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).  To determine

19  whether the petitioner has met this burden, a federal habeas court looks to the last reasoned

20  state court decision because subsequent unexplained orders upholding that judgment are

21  presumed to rest upon the same ground.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04

22  (1991); *Medley v. Runnels*, 506 F.3d 857, 862 (9th Cir. 2007).

REPORT AND RECOMMENDATION - 8

01      Finally, AEDPA requires federal courts to give considerable deference to state court

02  decisions, and state courts' factual findings are presumed correct.  *See* 28 U.S.C. § 2254(e)(1).

03  Federal courts are also bound by a state's interpretation of its own laws.  *See Murtishaw v.*

04  *Woodford*, 255 F.3d 926, 964 (9th Cir. 2001) (citing *Powell v. Ducharme,* 998 F.2d 710, 713

05  (9th Cir. 1993)).

06      IV.      FEDERAL CLAIM FOR RELIEF

07      Petitioner raises the following eleven claims for relief in his amended federal habeas

08  corpus petition:

09       A. Conviction obtained by prejudicing jury[.] Defendant was
          paraded across hallway, in front of jurors and prospective
10          jurors, while in handcuffs, while jury was being selected and
          while trial was going on, also bailiff came up and stood between
11          witness stand and jury box while defendant was testifying,
          prejudicing the jury.
12       B. Denial of effective assistance of counsel. Defense law[y]er did
          not call any witnesses for defendant other than defendant and
13          his spouse.  There were many people present when alleged,
          supposed offinces [sic] took place who could have given
14          evidence that offinces [sic] never took place.  They were never
          called.
15       C. Evidence code 1108 is a violation of due process of law, on its
          face and as applied[.]  An unproven and uncharged, 43 year old
16          incident, which was never proven to have happened, and
          defendant says never happened, should never have been
17          admitted.  This also goes for incident with . . .  [E.], which
          nothing ever happened.  She admitted not remembering.
18       D. Denial of sixth amendment rights to jury determination on all
          issues.   Jury was not instructed about possible findings of
19          less[e]r offences [sic].   Denying defendant of his rights of
          determination by a jury of all issues.
20       E. The court err[ed] prejudicially in failing to instruct sua sponte
          the jury in accordance with CALJIC No. 2.71, or similar
21          instruction which defined admission and informed the jury that
          evidence of an oral admission of a defendant should be viewed
22          with caution.

REPORT AND RECOMMENDATION - 9

01    F.   The trial courts giving of CALJIC 2.20.1 was reversible error as
           it deprived appellant of due process of law.
02    G.   Even if evidence code section 1108 is constitutional the 2002
           revision of CALJIC No. 2.50.01 given here regarding
03         propensity evidence, was erroneous, denying appell[ant] due
           process of law and a fair trial.
04    H.   The court err[ed] in failing to instruct on two essent[i]al
           elements of the one strike law, denying appell[ant] due process
05         of law, a fair trial, and the right of a jury determination on all
           issues.
06    I.   The cumulative effect of errors discussed here in section 12
           deprived appel[lant] of due process of law and a fair trial and
07         should result in a reversal of judgement [sic].
      J.   The court err[ed] in applying the multiple victim circumstance
08         under the one strike law 5 times in a case involving two victims
           in violation of penal code 654 and state and federal
09         constitutional principles of due process and double jeopardy.
      K.   The term of 32 yrs to life imposed upon appel[lant], an ailing 68
10         year-old man, with no criminal record or history of violence
           constitute cruel and unusual punishment under both the
11         California and U.S. Constitutions and should be reversed.

12   (Dkt. 10 at 5-6 and Attachments.)   The above claims and supporting facts

13   constitute the entirety of petitioner's federal habeas petition.   Although

14   petitioner filed a traverse in response to his answer, his petition does not

15   contain any additional briefing, citation to legal authority, or factual support.

16       V.     EXHAUSTION

17          Respondent submits that petitioner's first two federal claims for relief are unexhausted

18   because petitioner failed to present them to any state court. (*See* Dkt. 26 at 12.)  Respondent

19   contends the amended petition should be dismissed without prejudice, or that petitioner

20   should be directed to file an amended petition absent the unexhausted claims. (*See id.*)  In the

21   alternative, respondent asserts this Court should deny the claims on the merits. (*See id.* at 14.)

22   Petitioner fails to address this issue in his traverse. (*See* Dkt. 29.)

REPORT AND RECOMMENDATION - 10

01        In order to properly exhaust state court remedies, California state prisoners must

02   present the California Supreme Court with a fair opportunity to rule on the merits of every

03   issue raised in his federal habeas corpus petition.  *See* 28 U.S.C. § 2254(b) & (c); *Granberry*

04   *v. Greer*, 481 U.S. 129, 133-34 (1987).  *See also Duncan v. Henry*, 513 U.S. 364, 365-66

05   (1995); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  Petitioners must notify the state courts

06   that they are presenting a federal claim in order to satisfy the fair opportunity rule.  *See*

07   *Duncan*, 513 U.S. at 365-66.  More specifically, in this Circuit, petitioners must "make the

08   federal basis of the claim explicit either by specifying particular provisions of the federal

09   Constitution or statutes, or by citing to federal case law."  *Insyxiengmay v. Morgan*, 403 F.3d

10   657, 668 (9th Cir. 2005) (citing *Lyons v. Crawford*, 232 F.3d 666, 668, 670 (9th Cir. 2000), *as*

11   *modified by* 247 F.3d 904 (9th Cir. 2001) (stating that the law in this Circuit requires

12   petitioners to "make the federal basis of the claim explicit either by specifying particular

13   provisions of the federal Constitution or statutes, or by citing to federal case law.")).

14        Here, petitioner failed to present his first two federal claims in either of his state court

15   petitions.  In general, petitions that contain unexhausted claims must be dismissed.  *Rose v.*

16   *Lundy*, 455 U.S. 509, 522 (1982).  Federal courts have the discretion to deny a habeas

17   application on the merits, however, notwithstanding a petitioner's failure to fully exhaust his

18   state court remedies.  *See* 28 U.S.C. § 2254(b)(2) ("[a]n application for a writ of habeas

19   corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the

20   remedies available in the courts of the State"); *Cassett v. Stewart,* 406 F.3d 614, 624 (9th Cir.

21   2005) (a federal court considering a habeas petition may deny an unexhausted claim on the

22   merits when it is perfectly clear that the claim is not "colorable").  For the reasons discussed

01  *infra*, petitioner's claims must fail on the merits.  I therefore recommend the Court proceed to

02  the merits of all eleven of petitioner's claims and deny the petition.  To require him to return

03  to the California Supreme Court would further delay an already protracted case, for no other

04  purpose.

05          This Court also notes that respondent has addressed nine of petitioner's eleven federal

06  claims for relief, omitting any discussion regarding exhaustion or the merits of petitioner's

07  third and fourth claims.  (*See* Dkt. 26 at 2 and 12-20.)  Respondent's failure to address all of

08  the allegations in the amended petition appears to be an oversight and is in violation of Rule

09  5(b) of the Rules Governing Section 2254 Cases in the United States District Courts, which

10  requires respondent to address all allegations presented in a habeas corpus petition.  In light of

11  the already lengthy delay in this case, however, the Court has independently reviewed the

12  record and determined that petitioner properly presented his third and fourth claims to the

13  state's highest court.  (*See* Dkt. 28, LD 4 at  6-12.)  *See* 28 U.S.C. § 2254(b)(3); *O'Sullivan v.*

14  *Boerckel*, 526 U.S. 838, 845 (1999) ("[s]tate prisoners must give the state courts one full

15  opportunity to resolve any constitutional issues by invoking one complete round of the State's

16  established appellate review process"); *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999)

17  (holding that California law requires presentation of claims to the California Supreme Court

18  through petition for discretionary review in order to exhaust state court remedies).

19  Accordingly, I recommend the Court find that petitioner has properly exhausted his third and

20  fourth grounds for relief and should proceed to the merits of both claims as well.

21

22

REPORT AND RECOMMENDATION - 12

01        VI.      DISCUSSION

02        A.      *Unconstitutional Security Precautions* (Unexhausted Claim)

03        Petitioner contends that potential jurors and, ultimately those jurors who were selected

04  to serve on the jury, were prejudiced when they saw petitioner walk down the hallway

05  towards the courtroom in handcuffs "on occasions." (*See* Dkt. 10 at 5 and Dkt. 29 at 1.)  In

06  addition, he contends that on two occasions they saw him enter the courtroom and sit at

07  counsel's table before his handcuffs were removed. (*See id.*)  He also asserts that the jury was

08  prejudiced when the Bailiff stood in between the petitioner and the jury box when he testified.

09  (*See id.*)  Respondent argues that petitioner's claims are baseless as he fails to show how the

10  alleged security precautions were sufficiently prejudicial and he fails to cite a federal case,

11  statute or constitutional provision to support his claim. (*See id.*; Dkt. 29 at 1-3; and Dkt. 26 at

12  16.)

13        1.      Unconstitutional Shackling

14        The U.S. Supreme Court has held that the appearance of a defendant in shackles

15  before a jury during a trial can violate the defendant's Fifth and Fourteenth Amendment rights

16  to due process. *Deck v. Missouri,* 544 U.S. 622, 629-634 (2005).  The Court reasoned that

17  "[v]isible shackling undermines the presumption of innocence and related fairness of the

18  factfinding process[,] . . . can interfere with the accused's 'ability to communicate' with his

19  lawyer" and "participate in his own defense[,]" and "'affront[s]' the 'dignity and decorum of

20  judicial proceedings that the judge is seeking to uphold.'" *Id.* at 630-31 (alteration in original)

21  (quoting *Illinois v. Allen*, 397 U.S. 337, 344 (1970)).

22

01      The Court therefore held that "[trial] courts cannot routinely place defendants in

02  shackles or other physical restraints visible to the jury" without making a specific

03  determination that such restraints are necessary with regard to this particular defendant on the

04  basis that shackling is "'inherently prejudicial'." *Id.* at 634 (quoting *Holbrook v. Flynn*, 475

05  U.S. 560, 568 (1986)).  Thus, "where a court, without adequate justification, orders the

06  defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate

07  actual prejudice to make out a due process violation." *Id.*  Instead, the State bears the burden

08  of proving "beyond a reasonable doubt that the [shackling] error complained of did not

09  contribute to the verdict obtained." *Id.* (quoting *Chapman v. California*, 386 U.S. 18, 24

10  (1967)).

11      Although *Deck* set forth a heightened standard of review by shifting the burden to the

12  State, the U.S. Supreme Court subsequently clarified that in § 2254 proceedings courts are to

13  apply the "more forgiving" standard of review set forth in *Brecht v. Abrahamson*, 507 U.S.

14  619, 631 (1993).  *See Frye v. Pliler*, 551 U.S. 112, 121-22 (2007) ("a court must assess the

15  prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial

16  and injurious effect" standard set forth in *Brecht* . . . whether or not the state appellate court

17  recognized the error and reviewed it for harmlessness under the [*Chapman* standard of

18  review].").

19      Here, petitioner asserts that both the potential and empanelled jurors witnessed him

20  walk down the hallway towards the courtroom in handcuffs "on occasions" and on at least

21  two occasions saw him enter the courtroom and sit down at counsel's table before his

22  handcuffs were removed.  (*See* Dkt. 10 at 5 and Dkt. 29 at 1.)  Even if we assume petitioner's

01  factual allegations are correct, nowhere does petitioner allege he was restrained or shackled

02  during the trial.  The *Deck*-line of cases is applicable where a trial court determines that a

03  defendant must be physically restrained during the guilt or penalty phase of a trial.  That is not

04  our case.

05         The facts alleged by petitioner establish that petitioner, who was in custody, was being

06  brought into the courtroom in handcuffs and that the handcuffs were removed once he was

07  seated.  The Ninth Circuit has long "held that a jury's brief or inadvertent glimpse of a

08  defendant in physical restraints outside of the courtroom does not warrant habeas corpus relief

09  unless the petitioner makes an affirmative showing of prejudice.  *See Ghent v. Woodford,* 279

10  F.3d 1121, 1133 (9th Cir. 2002) (the jurors' occasional, brief glimpses of the defendant in

11  handcuffs and other restraints in the hallway at the entrance to the courtroom was not

12  prejudicial); *Olano,* 62 F.3d 1180, 1190 (9th Cir. 1995) ("a jury's brief or inadvertent glimpse

13  of a defendant in physical restraints is not inherently or presumptively prejudicial to a

14  defendant"); *Castillo v. Stainer*, 983 F.2d 145, 148 (9th Cir. 1992) (no prejudice when, during

15  transport to or from the courtroom, some members of the jury pool saw the defendant in

16  shackles in the court corridor); *United States v. Halliburton*, 870 F.2d 557, 560-62 (9th Cir.

17  1989) (jurors' inadvertent observation of the defendant in handcuffs in the corridor did not

18  prejudicially impair the defendant's right to a fair trial); *Wilson v. McCarthy*, 770 F.2d 1482,

19  1485-86 (9th Cir. 1985) (the jury's brief viewing of defendant's shackles as he left the witness

20  stand at the conclusion of his testimony was not prejudicial).

21         Accordingly, the jurors' view of petitioner in handcuffs as he walked down the

22  hallway and went into the courtroom was not inherently or presumptively prejudicial.  *See*

REPORT AND RECOMMENDATION - 15

01  *Williams v. Woodford*, 398 F.3d 567, 592-593 (9th Cir. 2004) (as amended); *United States v.*

02  *Leach*, 429 F.2d 956, 962 (8th Cir. 1970) ("[i]t's a normal and regular as well as highly

03  desirable and necessary practice to handcuff prisoners when they are being taken from one

04  place to another, and the jury is aware of this."). I therefore recommend this Court find that

05  petitioner is not entitled to habeas relief as to this claim.[3]

06                2.    Unnecessary Security During Petitioner's Testimony

07       Petitioner alleges that the Bailiff came up to the front of the courtroom when he took

08  the stand and stood between him and the jury. (*See* Dkt. 29 at 2.) He contends the Bailiff

09  "appeared to be guarding the jury from some kind of attack." (*See id.*)

10       First, this Court's review is limited to determining whether a conviction violated

11  federal law, which petitioner fails to clearly allege. *See Estelle v. McGuire*, 502 U.S. 62, 67

12  (1991). Even assuming he asserts a federal constitutional violation, the U.S. Supreme Court

13  has held that the presence of armed guards in the courtroom is not equivalent to physically

14  restraining the defendant. *Holbrook*, 475 U.S. at 568-69 (petitioner is not denied his

15  constitutional right to a fair trial when, at his trial with five co-defendants, customary

16  courtroom security force was supplemented by four uniformed state troopers sitting in the first

17  row of spectator section). The presence of security personal in close proximity to the

18  defendant is expressly contrasted with inherently prejudicial practices such as shackling

19  during a trial. *See id.* Thus, when analyzing the situation alleged in this case, this Court is

20  required to:

21  _____

22       [3] For the same reasons, petitioner's claim in his traverse that he complained to his trial counsel
     about this issue does not merit habeas corpus review. (*See* Dkt. 29 at 1.)

01
02
03

> look at the scene presented to the jurors and determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to defendant's right to trial; if the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over.

04 *Id.* at 572.

05       If petitioner intended to assert that the above security measures violated his federal

06 due process rights, his claim fails because he has not demonstrated that he suffered any

07 prejudice as a result of the alleged security precautions.   He simply fails to present any

08 documentary or other evidence to support his claims.   Moreover, the type of security present

09 in this particular courtroom – a single bailiff positioned between the defendant and the jury

10 during the defendant's testimony – is not inherently prejudicial.  Because petitioner is

11 ultimately unable to demonstrate actual prejudice as a result of the Bailiff's position, I

12 recommend the court deny petitioner's claim.

13       B.       *Ineffective Assistance of Counsel* (Unexhausted Claim)

14       Petitioner claims his trial counsel was ineffective when he failed to "call any witnesses

15 for defendant other than defendant and his spouse." (Dkt. 10 at 5.)  Respondent contends this

16 claim is without merit as petitioner is unable to show that defense counsel's representation

17 was deficient and that the outcome of the proceeding would have been different if additional

18 witnesses were called.  (*See* Dkt. 26 at 17-20.)

19       In order to establish ineffective assistance of counsel, petitioner must demonstrate that

20 counsel's representation fell below the objective standard of reasonableness and that the

21 deficient performance affected the result of the proceeding.  *United States v. Strickland*, 466

22 U.S. at 687-88.  A strong presumption exists that counsel's conduct falls within the wide-

01 range of reasonable professional assistance. *Id.* at 689.  To demonstrate prejudice, "[t]he

02 defendant must show that there is a reasonable probability that, but for counsel's

03 unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

04 The U.S. Supreme Court defines "reasonable probability" as a "probability sufficient to

05 undermine confidence in the outcome." *Id.*  Thus, in all cases, "the defendant bears the

06 burden of proving that counsel's representation was unreasonable under prevailing

07 professional norms and that the challenged action was not sound strategy." *Kimmelman v.*

08 *Morison*, 477 U.S. 365, 381 (1986).

09          Here, petitioner contends that he received ineffective assistance of trial counsel

10 because counsel failed to call additional witnesses in his defense.  He claims many people

11 were present when the alleged offenses occurred and that those people could have testified

12 that such offenses never took place.  (*See* Dkt. 10 at 5.)  He identifies these witnesses by name

13 in his traverse.  (*See* Dkt. 29 at 7-8.)  A review of the record reveals that petitioner fails to

14 show there is a reasonable probability that if such witnesses were called, the outcome of the

15 trial would have been different.  *See Strickland,* 466 U.S. at 694.  Specifically, to establish

16 ineffective assistance of counsel based upon a failure to call witnesses, petitioner must

17 identify the witnesses in question, state with specificity what those witnesses would have

18 testified to, and explain how that testimony might have altered the outcome of the trial.  *See*

19 *Alcala v. Woodford*, 334 F.3d 862, 872-73 (9th Cir. 2003); *see also United States v. Berry*,

20 814 F.2d 1406, 1409 (9th Cir. 1987) (rejecting appellant's ineffective assistance claim where

21 "[h]e offer[ed] no indication of what these witnesses would have testified to, or how their

22 testimony might have changed the outcome of the hearing.").  Finally, the petitioner must

01    show that the witnesses in question were actually available and willing to testify.  *See Alcala*,

02    334 F.3d at 872-73.  *See also United States v. Harden*, 846 F.2d 1229, 1231-32 (9th Cir.

03    1988) (rejecting ineffective assistance claim where there was no evidence which established

04    that the witness would have testified in the trial).

05        Petitioner is unable to overcome the strong presumption that:  1) defense counsel's

06    decision to only call petitioner and his wife was sound trial strategy; 2) such decision was

07    unreasonable under prevailing professional norms; and 3) the witnesses he identified would

08    have been available and willing to testify at trial.   I therefore recommend this Court deny

09    petitioner's claim.

10        In addition to the unexhausted ineffective assistance of counsel claim presented in his

11    amended federal habeas corpus petition, petitioner also raises several additional claims of

12    ineffective assistance of trial counsel in his traverse.  (*See* Dkt. 29 at 3-10.)  Specifically, he

13    claims that his trial counsel rendered ineffective assistance by: (1) failing to suppress several

14    victims' testimony; (2) having no experience with "life sentence" cases; and (3) failing to

15    obtain impeachment evidence.  (*See id.*)  To the extent petitioner is attempting to belatedly

16    raise new claims in his traverse, relief should be denied.  *See Cacoperdo v. Demosthenes,* 37

17    F.3d 504, 507 (9th Cir. 1994) (a traverse is not the proper pleading to raise additional grounds

18    for relief); *see also Greenwood v. Fed. Aviation Admin.,* 28 F.3d 971, 977 (9th Cir. 1994)

19    ("we review only issues which are argued specifically and distinctly in a party's opening

20    brief").  Even if these claims had been properly raised or petitioner had sought leave to amend

21    to add these unexhausted claims, such amendment would be futile as he fails to demonstrate

22    that any of these claims rise to the level of a constitutional violation entitling him to relief.

01          C.      *Due Process Challenge to California Evidence Code § 1108*

02          Petitioner contends his due process rights were violated when the trial court admitted

03   evidence of uncharged prior sexual offenses against two victims under California Evidence

04   Code § 1108.  (*See* Dkt. 10 at 3-4.)  Two victims testified at trial that petitioner had previously

05   molested them on multiple occasions.  (*See id.*)  Petitioner also contends that § 1108 is

06   unconstitutional "on its face" and "as applied."  (*See id.* 10 at 6.)  Although respondent failed

07   to address this claim in his answer, this same issue was fully briefed and addressed in the

08   California Court of Appeal, which issued a reasoned decision denying petitioner's claim on

09   state law grounds.  (*See* Dkt. 28, LD 3 at 7-13.)

10          California Evidence Code § 1108(a) states that "[i]n a criminal action in which the

11   defendant is accused of a sexual offense, evidence of the defendant's commission of another

12   sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not

13   inadmissible pursuant to Section 352 [which allows a trial court to exclude evidence if its

14   probative value is outweighed by its prejudicial effect]."  (*See id.* at 8-9.)  While this

15   legislative language is not a model of clarity, the thrust of it appears to be as follows: the trial

16   court may admit evidence of commission of another, uncharged sexual offense unless its

17   probative value is outweighed by its prejudicial effect.  The California Court of Appeal

18   rejected petitioner's due process claim on direct review based upon the California Supreme

19   Court's decision in *People v. Falsetta*, which held that § 1108 does not violate federal or state

20   due process because it requires the trial court to weigh the evidence under Evidence Code

21   § 352.  21 Cal.4th 903, 910-922 (1999).  (*See* Dkt. 28, LD 3 at 9.)

22

REPORT AND RECOMMENDATION - 20

01          Petitioner challenges this statute on federal due process grounds.  The Due Process

02   Clause has limited operation "beyond the specific guarantees enumerated in the Bill of

03   Rights," however.  *Dowling v. United States,* 493 U.S. 342, 352 (1990).  In fact, state laws

04   only violate the Due Process Clause if they offend "some principle of justice so rooted in the

05   traditions and conscience of our people as to be ranked as fundamental."  *Montana v.*

06   *Egelhoff*, 518 U.S. 37, 43 (1996).  Review of a due process claim in a federal habeas corpus

07   petition is further limited to whether the trial court admitted an error that rendered the trial so

08   arbitrary and fundamentally unfair that it violated federal due process.  *Estelle,* 502 U.S. at 67;

09   *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995).

10          Moreover, the Supreme Court "has never expressly held that it violates due process to

11   admit other crimes evidence for the purpose of showing conduct in conformity therewith, or

12   that it violates due process to admit other crimes evidence for other purposes without an

13   instruction limiting the jury's consideration of the evidence to such purposes."  *Garceau v.*

14   *Woodford*, 275 F.3d 769, 774 (9th Cir. 2001), *overruled on other grounds* by *Woodford v.*

15   *Garceau*, 538 U.S. 202 (2003).  To the contrary, the Supreme Court has expressly left open

16   the precise question of whether propensity evidence offends the Due Process Clause.  *Estelle*,

17   502 U.S. at 75 n. 5 ("Because we need not reach this issue, we express no opinion on whether

18   a state law would violate the Due Process Clause if it permitted the use of 'prior crimes'

19   evidence to show propensity to commit a charged crime").  *See Mejia v. Garcia,* 534 F.3d

20   1036, 1046 (9th Cir. 2008) (holding that a state court had not acted objectively unreasonable

21   in determining that the propensity evidence introduced against the defendant did not violate

22   his right to due process); *Alberni v. McDaniel,* 458 F.3d 860, 863-67 (9th Cir. 2006), *cert.*

REPORT AND RECOMMENDATION - 21

01  *denied,* 549 U.S. 1287 (2007) (denying the petitioner's claim that the introduction of

02  propensity evidence violated his due process rights under the Fourteenth Amendment because

03  "the right [petitioner] asserts has not been clearly established by the Supreme Court, as

04  required by AEDPA.").

05       Furthermore, "[w]hile no federal court has specifically ruled on the constitutionality of

06  section 1108, several circuit courts, including the Ninth Circuit Court of Appeals, have upheld

07  the use of propensity evidence under Rule 413 and 414 of the Federal Rules of Evidence."

08  *Smiley v. Evans*, 2009 WL 2912514, *6 (N.D. Cal. Sept. 8, 2009) (unpublished) (citing *United*

09  *States v. LeMay*, 260 F.3d 1018, 1024-25 (9th Cir. 2001) (holding that Federal Rule of

10  Evidence 414, which permits admission of evidence of similar crimes in child molestation

11  cases, does not violate the due process cause because it is limited by Rule 403)); *Wolff v.*

12  *Newland,* 67 Fed. Appx. 398 (9th Cir. 2003) (California's Rule 1108 was modeled after the

13  Federal Rules, and contains an express requirement that courts balance the probative value of

14  the evidence against its prejudicial effect"); *United States v. Castillo*, 140 F.3d 874, 881 (10th

15  Cir. 1998); *United States v. Mound*, 149 F.3d 799, 801 (8th Cir. 1998)).  *See also Soto v.*

16  *Adams*, 2010 WL 1286877 (E.D. Cal. March 29, 2010) (unpublished) (holding the California

17  state court's rejection of a petitioner's due process challenge to § 1108 was not contrary to

18  U.S. Supreme court law); *Barreto v. Martel*, 2010 WL 546586, *4 (N.D. Cal. Feb. 10, 2010)

19  (the same).

20       Because the Supreme Court has expressly left open the question of whether the

21  admission of propensity evidence violates due process, the California state courts' rejection of

22  petitioner's § 1108 claim was not contrary to or an unreasonably application of U.S. Supreme

01  Court precedent.  *See Brewer v. Hall,* 378 F.3d 952, 955 (9th Cir. 2004) ("If no Supreme

02  Court precedent creates clearly established federal law relating to the legal issue the habeas

03  petitioner raised in state court, the state court's decision cannot be contrary to or an

04  unreasonable application of clearly established federal law").  I therefore recommend this

05  Court find petitioner is not entitled to relief on this claim.

06          D.      *Juror Instruction Error - No. 1*

07          Petitioner contends that his Sixth Amendment right to a jury determination of all

08  issues was violated when the trial court erred by failing to instruct the jury on a lesser

09  included offense.  (*See* Dkt. 10 at 6.)  Petitioner does not cite a single federal case or fact to

10  support his claim.  (*See id.* and Dkt. 29.)  Respondent also fails to address this claim in his

11  answer.  (*See* Dkt. 26.)  And, while petitioner presented this as a federal constitutional issue in

12  his state court briefs, the California Court of Appeal rejected it on state law grounds, holding

13  that trial court did not have a duty *sua sponte* to instruct the jury on a lesser included offense

14  in this case.  (*See* Dkt. 29, LD 3 at 13-15.)

15          Even assuming petitioner properly presented this claim in this Court, there is no

16  clearly established federal law that requires a trial court to instruct on a lesser included

17  offense.  In *Beck v. Alabama*, a capital case, the Supreme Court held that the failure to instruct

18  the jury on a lesser-included offense violates the Due Process Clause if there is evidence to

19  support the instruction.  447 U.S. 625 (1980).  The *Beck* Court expressly declined to decide

20  whether the Due Process Clause requires the sentencing court to provide a lesser-included

21  offense instruction in a noncapital case, however.  *Id.* at 638 n.14.  *See United States v.*

22  *Torres-Flores,* 502 F.3d 885, 888 n.3 (9th Cir. 2007) ("*Beck* left open whether the due process

right extends to defendants in noncapital cases.").  After *Beck*, the Ninth Circuit held that the

failure of a state trial court to instruct the jury on a lesser included offense in a non-capital

case, in general, is not a federal constitutional question and cannot be considered in a habeas

corpus proceeding.  *Bashor v. Risley*, 730 F.2d 1228, 1240 (9th Cir. 1984); *Windham v.*

*Merkle,* 163 F.3d 1092, 1105-1106 (9th Cir. 1998).  While the Ninth Circuit left open the

possibility that "the defendant's right to adequate jury instructions on his or her theory of the

case might, in some cases, constitute an exception to the general rule," such an exception

requires that the lesser included offense be consistent with the defendant's theory of his case.

*Solis v. Garcia,* 219 F.3d 922, 929 (9th Cir. 2000).  *See Bradley v. Duncan,* 315 F.3d 1091,

1098-1100 (9th Cir. 2002) (failure to instruct on a theory of defense may constitute a violation

of due process by depriving the defendant of the right to present his case if substantial

evidence was presented to support that defense).

Having reviewed the record, this Court finds the California Court of Appeal

reasonably concluded that the evidence did not support the trial court's *sua sponte* inclusion

of the lesser included offense of attempted commission of a lewd act, a theory that does not

appear to have been presented by the defense in the first instance.  (Dkt. 28, LD 3 at 13-15.)

As the state court held:

> D's testimony established defendant touched her stomach, she
> was under 14, and defendant announced his desire to "see
> what's down here" while struggling to push his hand farther
> down her pants. Defendant's intent was clear from his words
> and actions. The fact that D. managed to thwart his efforts to
> reach her private parts does not turn defendant's actions into an

01          attempt." Defendant completed an act qualifying as a
            molestation under section 288, subdivision (a).
02
    (*Id.* at 15.)
03
            Thus, even assuming that instructional error occurred, it was harmless, given the lack
04
    of support for this theory. *See Brecht,* 507 U.S. at 637.  Accordingly, I recommend the Court
05
    find that the omission of the lesser included instruction did not render petitioner's trial
06
    fundamentally unfair under constitutional due process standards, and more importantly, the
07
    state courts' rejection of this claim was not contrary to or an unreasonably application of U.S.
08
    Supreme Court authority. *See Brewer*, 378 F.3d at 955.  Petitioner's claim should therefore
09
    be denied.
10
            E.   *Jury Instruction Error - No. 2*
11
            Petitioner claims the trial court erred "prejudicially" when it failed to instruct the jury,
12
    *sua sponte*, with California Jury Instruction No. 2.71 ("evidence of an oral admission of the
13
    defendant not made in court should be viewed with caution").  Again, petitioner fails to
14
    articulate the basis for his federal constitutional claim, but reading his petition leniently, it
15
    appears he challenges the trial court's failure to instruct on due process grounds.  Respondent
16
    contends the state courts properly rejected petitioner's constitutional claim.
17
            In a reasoned decision, the California Court of Appeal held as follows:
18
                Defendant contends the trial court erred in failing to instruct sua
19              sponte with CALJIC No. 2.71.  CALJIC No. 71 provides: "An
                admission is a statement by [a] [the] defendant which does not
20              by itself acknowledge [his] [her] guilt of the crime[s] for which
                the defendant is on trial, but which statement tends to prove
21              [his] [her] guilt when considered with the rest of the evidence
                . . . . You are the exclusive judges as to whether the defendant
22              made an admission, and if so, whether that statement is true in

01     whole or in part. . . . [Evidence of an oral admission of [a] [the] defendant not made in court should be viewed with caution.]

02

03     Defendant argues the record is "replete" with statements made by defendant that the prosecution used to prove his guilt.

04 Among the statements defendant labels admissions are: D.'s statement that defendant said he was going to see what was "down there," E.'s statement that defendant told her his actions

05 were a secret, defendant's questioning S.'s father about whether there was a problem with the girls, and defendant's statements

06 to police regarding D.M.'s and E.'s living arrangements.

07     Any statements made outside the courtroom, whether inculpatory or exculpatory, that tends to prove guilt when

08 considered with the rest of the evidence constitutes an admission.  If substantial evidence exists that a defendant made

09 an oral admission, the court must sua sponte instruct the jury to view the evidence with caution.  The purpose of this cautionary

10 instruction is to assist the jury in determining whether the defendant actually made the statement. (*People v. Vega* (1990)

11 220 Cal.App.3d 310, 317-318; *People v. Zichko*, (2004) 118 Cal.App.4th 1055, 1059; *People v. Livaditis*, (1992) 2 Cal.4th

12 759, 784.)

13     The People contend most of the statements defendant terms admissions are, in fact, not admissions.  We agree.  Defendant

14 fails to explain how his remarks to S.'s father and the police tend to prove his guilt for the underlying offense.

15

16     Defendant's statements to D. that he was going to see what was "down there," suggesting sexual intent, does qualify as an admission tending to prove defendant guilty of the charged

17 offense.  As such, the trial court was required to instruct the jury to view defendant's statement with caution.

18

19     Failure to give CALJIC No. 2.71 is harmless if it is not reasonably probable a result more favorable to the defendant would have been reached absent the error.  (*People v. Pensinger*

20 (1991) 52 Cal.3d 1210, 1268-1269.)  Here, it is not reasonably probable defendant would have achieved a more favorable

21 result had the court given CALJIC No. 2.71.  Defendant's statement to D. provided evidence of this intent in touching her.

22 However, D. provided other evidence of defendant's intent.

01          Prior to the incident, defendant, when visiting the family in Indiana, frequently grabbed D.'s chest.  This testimony, coupled

02          with the Evidence Code section 1108 testimony of E. and S.S. regarding defendant's molestations of them, established

03          defendant's motive of sexual gratification in touching his victims.  Any error was harmless.

04

05          Defendant's statement to E. at most tended to prove the uncharged conduct involving E.  However, defendant's

06          statement to E. that it was a secret paled in comparison to E.'s recollection of the sexual conduct itself.  Even assuming defendant's statement qualifies as an admission, it added little

07          to E.'s description of his actions.  Again, error was harmless.

08 (Dkt. 28, LD 3 at 15-18.)

09         To obtain relief in a habeas corpus proceeding for errors in the jury charge, a

10 petitioner must demonstrate that the jury instruction error "so infected the entire trial that the

11 resulting conviction violates due process."  *Estelle*, 502 U.S. at 72.  In order to make this

12 determination, the court must evaluate the jury instructions in the context of the charge to the

13 jury and the entire trial process.  *United States v. Frady*, 456 U.S. 152, 169 (1982).  As

14 discussed briefly in the prior section, if the court determines the instruction violated

15 petitioner's due process rights, he can only obtain relief if the error "'had [a] substantial and

16 injurious effect or influence in determining the jury's verdict.'"  *Brecht  v. Abrahamson,* 507

17 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776 (1946)).  Trial

18 errors that do not meet this test are deemed harmless.  *Bonin v. Calderon,* 59 F.3d 815, 824

19 (9th Cir. 1995).  *See also Hedgpeth v. Pulido*, --- U.S. ---, 129 S.Ct. 530, 531 (2008).

20         As the California Court of Appeal found, two out of the three alleged "admissions"

21 were not admissions at all.  Petitioner's statements to S.'s father and to the police did not

22 constitute admissions and therefore the court's failure to advise the jury did not require a

REPORT AND RECOMMENDATION - 27

01  cautionary instruction.  Petitioner's statement to D. that he was going to see what was "down

02  here" was found to be an admission, however, warranting instruction under CALJIC 2.71.

03  Nonetheless, there was additional testimony from D. and other victims to support the

04  allegation that petitioner's intent was sexual.  As the California Court of Appeal explained,

05  the evidence against petitioner was substantial.  Thus, even if the cautionary instruction had

06  been given, petitioner is unable to demonstrate that such an instruction would have made a

07  difference in this case.

08       Accordingly, the California courts' decision to reject petitioner's jury instruction claim

09  is not contrary to or an unreasonable application of clearly established U.S. Supreme Court

10  precedent.  I therefore recommend the Court deny petitioner relief as to this claim.

11       F.    *Jury Instruction Error - No.3*

12       Petitioner asserts that CALJIC No. 2.20.1 violated his constitutional right to due

13  process.  (*See* Dkt. 10 at 6a, "Section # 12 Continuation #1.")  Again, he provides no authority

14  or factual support for his assertion.  Respondent contends that the state court properly rejected

15  petitioner's claim.  The California Court of Appeal addressed this claim and held as follows:

16

17              Defendant argues the trial court's instruction on the evaluation
              of the testimony of a child under 10 years of age violated his
              right to due process. According to defendant, the instruction
18            unfairly enhanced the credibility of D.M., lessening the
              People's burden of proof.

19
              The court instructed: "In evaluating the testimony of a child ten
20            years of age or younger, you should consider all of the factors
              surrounding the child's testimony including the age of the child
21            and any evidence regarding the child's level of cognitive
              development. . . . A child, because of age and level of cognitive
22            development, may perform differently than an adult as a

REPORT AND RECOMMENDATION - 28

witness, but that does not mean a child is any more or less believable than an adult.  You should not discount or distrust the testimony of a child solely because he or she is a child. . . . 'Cognitive' means the child's ability to perceive, to understand, to remember, and to communicate any matter about which the child has knowledge." (CALJIC No. 2.20.1.)

Numerous courts have upheld CALJIC No. 2.20.1 in the face of a due process challenge. In *People v. Harlan* (1990) 222 Cal.App.3d 439 (*Harlan*), the court found CALJIC No. 2.20.1 does not inform jurors to disregard a child's age and cognitive abilities.  The second sentence of the instruction "merely advises the jury that due to the age and level of cognitive development, a child may act differently on the witness stand than an adult.  It does not relate to the truth or falsity of the content of the child's *testimony*.  The language refers to one of many factors to be applied to a jury in determining a witness's credibility, namely, the demeanor and manner of the witness while testifying." (*Harlan*, at p. 455.)

The *Harlan* court concluded the instruction does not rob the jury of its role in making findings on the child's credibility as a witness.  Instead, the instruction requires that jurors not find a child witness unreliable solely because of his or her age.  Jurors should consider the child's testimony in light of evidence of the child's cognitive development and other factors. (*Harlan*, *supra*, 222 Cal.App.3d at p. 456.)

Other courts have found CALJIC No. 2.20.1 did not impermissibly lessen the prosecution's burden of proof, but only provided the jury with guidance in assessing the credibility of a class of witnesses, supplanting a traditional bias against these witnesses. (*People v. Gilbert* (1992) 5 Cal.App.4th 1372, 1393.)  Nor does CALJIC 2.20.1 remove the issue of credibility from the jury. Instead, the instruction directs the jury to determine credibility after considering all the factors related to a child's testimony, including the demeanor of the child. (*People v. Jones* (1992) 10 Cal.App.4th 1566, 1574.)

Accordingly, the trial court did not err in instructing the jury pursuant to CALJIC 2.20.1.

(Dkt. 28, LD 3 at 18-19.)

01       In *Cupp v. Naughten*, the Supreme Court held that a state judge's instruction to a jury

02  at a criminal trial advising that "[e]very witness is presumed to speak the truth," and

03  explaining ways in which that presumption might be overcome, did not violate due process.

04  414 U.S. 141, 142 (1973) (internal quotation marks omitted).  Even if such an instruction

05  were undesirable or erroneous, a state conviction would not be overturned unless the

06  instruction "violated some right which was guaranteed to the defendant by the Fourteenth

07  Amendment."  *Id.* at 146.

08       The strict standard for evaluating state courts' jury instructions coupled with the

09  California Court of Appeal's reasoned explanation that this instruction prevents the jury from

10  disregarding a child's testimony, without "amplifying" it, renders petitioner's claim without

11  merit.  *See Brodit v. Cambra,* 350 F.3d 985, 990-91 (9th Cir. 2003).  Because the state courts'

12  decisions do not contravene or unreasonably apply clearly established Supreme Court

13  precedent, I recommend this Court deny petitioner's claim for relief.

14      G.   *Jury Instruction Error - No. 4*

15       Petitioner asserts that even if California Code of Evidence § 1108 is found to be

16  constitutional, "the 2002 revision of CALJIC No. 2.50.01 given here regarding propensity

17  evidence was erroneous, denying appellate [sic] due process of law and a fair trial."  (Dkt. 10

18  at 6a, "Section #12 Continuation #1.")  Specifically, petitioner contends in his brief in the

19  state courts that the trial court erred and deprived him of due process of law in giving this

20  instruction because it impermissibly lessened the burden of the prosecution to prove him

21  guilty beyond a reasonable doubt.   (*See* Dkt. 28, LD 1 at 51-52.)  Respondent claims "the

22  state courts reasonably found no likelihood that the jury applied the challenged instructions to

01  convict Petitioner based on a preponderance of the evidence or any standard below proof

02  beyond a reasonable doubt." (*See* Dkt. 26 at 24-25.)

03          The California Court of Appeal considered this claim and held:

04          Defendant objects to the trial court's giving of CAJIC No.
            2.50.01, arguing the instruction violated his due process rights.
05          Defendant contends the instruction allows the jury to use his
            prior acts of molestation, proven by a preponderance of the
06          evidence, as proof of his intent in the charged offenses.

07          CALJIC 2.50.01, as given, states: "Evidence has been
            introduced for the purpose of showing that the defendant
08          engaged in a sexual offense on one or more occasions other than
            that charged in the case. . . . 'Sexual offense' means a crime
09          under the laws of the state or of the United States that involves
            any of the following: . . . Any conduct made criminal by Penal
10          Code section 288(a). . . . If you find that the defendant
            committed a prior sexual offense, you may, but are not required
11          to, infer that the defendant had a disposition to commit sexual
            offenses. . . . If you find that the defendant had this disposition,
12          you may, but are not required to, infer that he was likely to
            commit and did commit the crime or crimes of which he is
13          accused. . . . **However, if you find by a preponderance of the
            evidence that the defendant committed a prior sexual
14          offense . . . that is not sufficient by itself to prove beyond a
            reasonable doubt that he committed the charged crimes. If
15          you determine an inference properly can be drawn from
            this evidence, this inference is simply one item for you to
16          consider, along with all other evidence, in determining
            whether the defendant has been proved guilty beyond a
17          reasonable doubt of the charged crime.** You must not
            consider this evidence for any other purpose.
18
            As defendant concedes, the Supreme Court has found this
19          language passes constitutional muster. In *People v. Reliford*
            (2003) 29 Cal.4th 1007 (*Reliford*), the court found CALJIC No.
20          2.50.01 specifically the 2002 revision given in the present case,
            "provides additional guidance on the permissible use of the
21          other-acts evidence and reminds the jury of the standard of

22

01          proof for a conviction of the charged offenses." (*Reliford*, at p.
             1016.)  We find no error.

02

03      (Dkt. 28, LD 3 at 20-21 and LD 8 at 135) (emphasis added).

04          The U.S. Supreme Court has made clear that the Due Process Clause is violated if the

05      trial court fails to properly instruct the jury that the defendant is presumed innocent until

06      proven guilty beyond a reasonable doubt.  *See Middleton v. McNeil,* 541 U.S. 433, 437

07      (2004).  Thus, due process "requires the prosecution to prove every element charged in a

08      criminal offense beyond a reasonable doubt."  *Gibson v. Ortiz,* 387 F.3d 812, 820 (9th Cir.

09      2004), *overruled on other grounds* by *Byrd v. Lewis,* 566 F.3d 855, 866 (9th Cir. 2009),

10      (citing *In re Winship*, 397 U.S. 358, 364 (1970)).  "Any jury instruction that 'reduce[s] the

11      level of proof necessary for the Government to carry its burden . . .  is plainly inconsistent

12      with the constitutionally rooted presumption of innocence.'"  *Gibson,* 387 F.3d at 820

13      (alterations in original) (quoting *Cool v. United States,* 409 U.S. 100, 104 (1972)).

14          In *Gibson,* the Ninth Circuit Court of Appeals held that the 1996 version of CALJIC

15      No. 2.50.01 and CALJIC No. 2.50.1[4] were constitutionally flawed because the "interplay of

16      the two instructions allowed the jury to find that [the defendant] committed the uncharged

17      sexual offense by a preponderance of the evidence and thus to infer that he had committed the

18      *charged* acts based upon facts not found beyond a reasonable doubt, but by a preponderance

19      of the evidence."  387 F.3d at 822.  In 1999, CALJIC No. 2.50.01 was amended to clarify how

20      jurors should evaluate a defendant's guilt if they found that he had committed a prior sexual

21      _____

22          [4] The trial court also gave CALJIC No. 2.50.1, which instructed that "the prosecution has the
        burden of proving by a preponderance of the evidence that a defendant committed sexual offenses
        other than those for which he is on trial."  (Dkt. 28, LD 8 at 136.)

01  offense.  The revision added the following sentence: "However, if you find by a

02  preponderance of the evidence that the defendant committed prior sexual offenses, that is not

03  sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes."

04  CALJIC No. 2.50.01 (7th ed. 1999).  This instruction also added that "[t]he weight and

05  significance of the evidence, if any, are for you to decide." *Id.*  This same instruction was

06  revised again in 2002.  That version deleted the sentence "[t]he weight and significance of the

07  evidence, if any, are for you to decide," and inserted the following statement: "If you

08  determine an inference properly can be drawn from this evidence, this inference is simply one

09  item for you to consider, along with all other evidence, in determining whether the defendant

10  has been proved guilty beyond a reasonable doubt of the charged crime."  CALJIC No.

11  2.50.01.   As discussed above, the California Supreme Court upheld the constitutionality of

12  the 1999 version of CALJIC No. 2.50.01 in *Ruliford*.  29 Cal.4th 1007, 1016 (2003).  It also

13  stated that the 2002 version, although not directly before the court, was "an improvement."

14  *Id.*

15       The trial court in this case charged the jury with the 2002 revision of CALJIC No.

16  2.50.01.  Challenges to the constitutionality of the 2002 version of CALJIC No. 2.50.01 have

17  been rejected by numerous federal courts in unpublished opinions on the basis that "the 2002

18  version is materially different, as it includes an explicit admonition that the evidence of a

19  prior sexual offense is not, by itself, sufficient to convict the defendant of the charged

20  crimes." *Abel v. Sullivan,* 326 Fed. Appx. 431, 434 (9th Cir. 2009).  *See e.g.*, *Soto v. Adams*,

21  2010 WL 1286877, *11-12 (E.D. Cal. March 29, 2010) (2002 version); *Barreto v. Martel*,

22  2010 WL 546586, *10-12 (N.D. Cal. Feb. 10, 2010) (2002 version).  In addition, the

01   instruction given in this case cautions the jury that the defendant must be proved guilty

02   beyond a reasonable doubt of the charged offenses.

03       Based on the reasoning of the above-cited opinions, I recommend this Court deny

04   petitioner's claim as he has failed to show how the California state courts' reliance on

05   *Reliford* in this case was contrary to, or an unreasonable application, of U.S. Supreme Court

06   precedent.

07       H.   *Jury Instruction Error - No. 5*

08       Petitioner claims the trial court failed to instruct the jury on two essential elements of

09   the one strike law, thereby denying him due process of law, a fair trial, and the right to a jury

10   determination on all issues.  (*See* Dkt. 10 at 6a, "Section #12 Continuation #1.")  Again,

11   petitioner presents no legal or factual support for his claim, other than that provided by

12   counsel in his state court briefs.  (*See* Dkt. 28, LD 1 at 63-61.)  Respondent argues that

13   petitioner's claim was properly rejected by the California state courts.  (*See* Dkt. 26 at 25-26.)

14       The California Court of Appeal summarized this claim and held as follows:

15           Defendant faults the trial court for failing to instruct on two
             essential elements of the one strike law, denying him his rights

16           to due process, a fair trial, and to a jury determination on all
             issues.  Defendant contends the jury had to find him ineligible

17           for probation under section 1203.066 before the trial court could
             sentence him under section 667.61.[5]  Defendant also argues the

18           court should have instructed the jury that it had to find separate
             occasions regarding the same victim to support multiple terms

19           for defendant's molestation of D.M.  Defendant contends these

20               [5]   Section 667.61, subdivision (b) provides as follows: "Except as
             provided in subdivision (a), a person who is convicted of an offense

21           specified in subdivision (c) under one of the circumstances specified
             in subdivision (e) shall be punished by imprisonment in the state

22           prison for life and shall not be eligible for release on parole for 15
             years except as provided in subdivision (j)."

01    omissions violate his right to a have a jury determine all issues
under *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d
02    403] (*Blakely*).

03    As defendant acknowledges, we previously rejected similar
arguments in *People v. Benitez* (2005) 127 Cal.App.4th 1274,
04    1278 (Benitez): "Finding a defendant ineligible for probation is
not a form of punishment, because probation itself is an act of
05    clemency on the part of the trial court.  [Citation.]  Because a
defendant's eligibility for probation results in a *reduction* rather
06    than an increase in the sentence prescribed for his offenses, it is
not subject to the rule of *Blakely*.  [Citations.]  As a result, the
07    enhancement of his molestation convictions did not offend his
constitutional rights."  We decline defendant's request to
08    reconsider *Benitez*.

09    Defendant's claim that the court erred in failing to instruct the
jury it must find separate occasions of molestation of D.M. to
10    support multiple life terms also fails.  Counts three through six
detailed specific, separate incidents of molestations committed
11    by defendant against D.M.  In instructing the jury, the court
stated counts three through six were "a further and separate
12    cause of action, being a different offense of the same class of
crimes and offenses connected in its commission" in other
13    charges. The jury found defendant guilty of each separate count.
As a result, the jury found each count a separate cause of action.

14

15  (Dkt. 28, LD 3 at 21-22.)

16    As discussed above, where a petitioner claims there was an instructional error in a

17  collateral proceeding such as this, the only question for this Court is "whether the ailing

18  instruction by itself so infected the entire trial that the resulting conviction violates due

19  process." *Cupp*, 414 U.S. at 147.  In this case, petitioner's "burden is especially heavy

20  because no erroneous instruction was given . . . . An omission, or an incomplete instruction, is

21  less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S.

22  145, 154-155 (1977).

REPORT AND RECOMMENDATION - 35

01        Petitioner presents no facts, case law, or legal argument to support his claim.  The

02  California Court of Appeal, relying upon California Supreme Court case law, found no

03  constitutional violation under *Blakely* because an instruction on the probation-eligibility

04  requirement would only have reduced petitioner's sentence, rather than increased it.  In

05  addition, petitioner's claim that the jury was not properly instructed that they must find

06  separate occasions of molestation was belied by the California Court of Appeal's finding that

07  the jury was instructed that "counts three through six were 'a further and separate cause of

08  action, being a different offense of the same class of crimes and offenses connected in its

09  commission' in other charges." (Dkt. 28, LD 3 at 22.)  Because the jury found petitioner

10  guilty on each separate count, the state court properly determined that the "jury found each

11  count a separate cause of action." (*Id.*)

12        Moreover,  the California state courts' decisions were neither contrary to or an

13  unreasonable determination of clearly established U.S. Supreme Court law, as nothing in the

14  record indicates the omission of the above suggested instructions infected the trial in any way.

15  I therefore recommend the Court find that petitioner is not entitled to relief on this claim.

16        I.    *Cumulative Error*

17        Petitioner claims the cumulative effect of the alleged trial errors in this case resulted in

18  prejudice. (*See* Dkt. 10 at 6a, "Section #12 Continuation #1.")  Respondent argues that where

19  no single constitutional error has occurred, nothing accumulates to the level of a constitutional

20  violation. (*See* Dkt. 26 at 27.)

21        While no single trial error may warrant relief, in some cases, the cumulative effect of

22  several errors may rise to the level of a constitutional violation. *See Alcala*, 334 F.3d at 893-

01  95; *Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002).  Where such trial errors have

02  occurred, but petitioner fails to show he suffered prejudice as a result, he must then show that

03  the combined effect of those deficiencies resulted in prejudice.  *See Villafuerte v. Stewart*, 111

04  F.3d 616, 632 (9th Cir. 1997).  We find, like the California courts found, that one trial error

05  occurred in this case, but that it had no prejudicial effect.  There were three other claims that

06  potentially presented trial errors (*supra* pgs. 15, 17, 25, 28), none of which had any prejudicial

07  effect.  With the overwhelming weight of the evidence against him, petitioner is unable to

08  demonstrate that the cumulative effect of these potential errors was prejudicial and, thus, that

09  any constitutional violation occurred.  I therefore recommend the Court deny this claim.

10           J.    *Sentence Violated the Due Process and Double Jeopardy Clauses*

11           Petitioner contends "the court err[ed] in applying the multiple victim circumstances

12  under the one strike law 5 times in a case involving two victims in violation of penal code 654

13  and state and federal constitutional principles of due process and double jeopardy."  (Dkt. 10

14  at 6b, "Section #12 Continuation #2.")  Petitioner cites no federal authority or factual support

15  for his claim and respondent fails to address the merits of this claim in his answer.  (*See* Dkt.

16  26 at 28-29.)

17           In analyzing petitioner's state and federal claims, the California Court of Appeals

18  carefully considered the double jeopardy provision in California Penal Code § 654 and held:

19
20           Defendant argues the trial court erred in applying the multiple
             victim circumstance under the one strike law when sentencing
21           him pursuant to section 667.61, subdivision (e)(5).  Defendant
             asserts the 15-years-to-life terms for counts four, five, and six
22           violate section 654.

01
02
03
04
05

Section 667.61, subdivision (b) provides that a defendant convicted under section 288, subdivision (a) who committed the offense against multiple victims shall be punished by the indeterminate term of 15 years to life.  (§ 667.61, subds. (c), (e)(5).)  Section 667.61, subdivision (g) states that the defendant shall be sentenced to one life term per victim per occasion no matter how many offenses listed in subdivision (c) the defendant committed against a particular victim on a particular occasion.

06
07
08
09

Section 654, subdivision (a) provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.  An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

10
11
12
13
14
15

Defendant contends his sentence under section 667.61 violates section 654.  However, as one court concluded: "Like other habitual offender provisions, section 667.61, subdivision (e)(5) "merely specifies the applicable sentence upon the present conviction for one with a certain criminal history.  It is the current offense which calls for the penalty, the magnitude of which is attributable to appellant's status as a repeat offender." [Citations.] That the conviction used to invoke punishment under subdivision (e)(5) occurred in the present case rather than in a prior proceeding does not warrant a different application of section 654." (*People v. DeSimone* (1998) 62 Cal.App.4th 693, 700 (*DeSimone*).)

16
17
18
19

Defendant disagrees with *DeSimone*, arguing the multiple victim circumstance in the present case "should not be considered a recidivist- or status-based penalty provision which is not subject to section 654."  Specifically, defendant argues the multiple counts involving D.M. offend section 654.

20
21

The people point out the counts involving D.M. detail violations that occurred at different times and involved different molestations. We agree. Courts three, four, five, and six charged defendant with separate violations against D.M. that took place over five months.

22

01
02
03
04
05
06

> Section 654 precludes multiple punishments for offenses committed as part of an indivisible course of conduct with a single intent and objective.  When offenses are independent of one another, a defendant may be punished separately even though the offenses share common acts or were part of an otherwise indivisible course of conduct.  (*People v. Hester* (2000) 22 Cal.4th 290, 294; *People v. Green* (1996) 50 Cal.App.4th 1076, 1084-1085.)  Here, defendant's offenses against D.M. do not form an indivisible course of conduct. Defendant molested D.M. on at least four discrete occasions over a five-month period.  We find no error.

07 (Dkt. 28, LD 3 at 23-25.)

08        The Double Jeopardy Clause of the Fifth Amendment guarantees that no person shall

09 "be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const.

10 amend. V.  In *Benton v. Maryland*, such protections were held applicable to the states through

11 the Fourteenth Amendment.  395 U.S. 784 (1969).  The double jeopardy guarantee protects

12 against: (1) a second prosecution for the same offense after acquittal or conviction; and (2)

13 multiple punishments for the same offense.  *See Witte v. United States,* 515 U.S. 389, 395-96

14 (1995).

15        In this case, as determined by the California Court of Appeal, petitioner received five

16 separate terms for five separate offenses.  Because he did not receive cumulative punishments

17 for any single act, his sentence did not violate the Double Jeopardy Clause.  The California

18 courts denied petitioner's federal due process claim on the same grounds as petitioner was

19 unable to support his argument that he received multiple punishments for the same act.  *See*

20 *Watts v. Bonneville*, 879 F.2d 685, 687-88 (9th Cir. 1989).   Because the California state

21 courts' decisions were not contrary to or an unreasonable application of clearly established

22

REPORT AND RECOMMENDATION - 39

01   U.S. Supreme Court law, I recommend this Court deny habeas corpus relief as to petitioner's

02   double jeopardy and due process claims.

03       K.   *Cruel and Unusual Punishment*

04       Petitioner claims "[t]he term of 32 yrs to life imposed upon appellant, an ailing 68

05   year-old man, with no criminal record or history of violence constitute[s] cruel and unusual

06   punishment under both the California and U.S. Constitutions and should be reversed."  (Dkt.

07   10 at 6(b), "Section #12 Continuation #12.")  He elaborates further in his traverse.  (*See* Dkt.

08   29 at 11.)  Respondent contends the state courts properly "applied the federal standard in

09   denying Petitioner's claim."  (Dkt. 26 at 31-32.)

10       The California Court of Appeal denied petitioner's federal claim in a clearly reasoned

11   decision.[6]  Specifically, it held:

13           A sentence violates the Eighth Amendment's prohibition
             against cruel and unusual punishment if it is grossly out of
14           proportion to the severity of the crime.   Under both the
             California and federal Constitutions, the test is whether the
15           sentence is so disproportionate to the crime for which it is
             inflicted that it shocks the conscience and offends fundamental
16           notions of human dignity. (*People v Alvarado* (2001) 87
             Cal.App.4th 178, 199 (*Alvarado*); *Rummel v. Estelle* (1980) 445
             U.S. 263, 271-72 [63 L.Ed.2d 382].)

18           In assessing a cruel and unusual punishment claim, we consider:
             the nature of the offense and the offender, how the punishment
19           compares with punishments for more serious crimes in the
             jurisdiction, and how the punishment compares with the

21           [6]  We do not reach petitioner's state law claim, as such claims are not cognizable in a federal
     habeas petition.  *See Estelle*, 502 U.S. at 67-68 (asserting that "it is not the province of a federal
22   habeas court to reexamine state-court determinations on state-law questions.").

punishment for the same offense in other jurisdictions. (*In re Lynch* (1972) 8 Cal.3d 410, 425-427 (*Lynch*).)

In considering the nature of the offense and the offender, we examine not only the offense as defined by the statutes but also the fact of the crime in question. We review motive, manner of commission, the extent of defendant's involvement, and the consequences of the defendant's acts. We also take into account the defendant's culpability in light of age, prior criminality, personal characteristics, and state of mind. (*People v. Crooks* (1997) 55 Cal.App.4th 797, 806.)

Defendant stresses his age and lack of a prior criminal record as support for his claim. Defendant claims his sentence is the equivalent of life without the possibility of parole, keeping him in prison "long past the age appellant would be likely to repeat anything like the charged offenses."

Defendant's claim pales in the face of the other factors we must consider. A jury convicted defendant of sexually molesting three young children. Defendant engaged in substantial sexual conduct, including committing oral copulation on D.M. Defendant took advantage of his position of trust as their grandfather, and their proximity within his home, to abuse his grandchildren.

The acts were not isolated incidents. Defendant molested D. both in Indiana and California. He molested D.M. over a span of five months. Defendant molested S. twice. In each case, defendant isolated the child, using his position as grandfather to gain access and control over his victim. This ongoing pattern of predatory behavior toward vulnerable family members justifies the harshness of defendant's sentence.

Defendant also argues his sentence is cruel and unusual in relation to terms imposed for similar offenses. However, while California has taken an aggressive approach reflecting a zero tolerance toward the commission of sexual offenses against particularly vulnerable victims, this alone does not render a defendant's sentence excessive as a matter of law. (*Alvarado*, *supra*, 87 Cal.App.4th at pp. 200-201.) As the People point out, although defendant notes more heinous crimes punished less severely, the converse is also true. Although voluntary

01  manslaughter merits a lesser sentence, some nonviolent crimes result in sentences of 25 years to life.

02  * * *

03
04  After weighing the factors enunciated in *Lynch*, we find defendant's sentence does not run afoul of the constitutional prohibition against cruel and unusual punishment.

05
06  (Dkt. 28, LD 3 at 25-27.)

07        The Eighth Amendment provides that cruel and unusual punishments shall not be

08  inflicted.   U.S. Const. amend. VIII.   A sentence constitutes cruel and unusual punishment if it

09  is "grossly disproportionate" to the crimes committed.   *Lockyer v. Andrade,* 538 U.S. 63, 71

10  (2003) (holding that a California state court's affirmance of two consecutive twenty-five-

11  years-to-life sentences for petty theft was not grossly disproportionate and not contrary to nor

12  an unreasonable application of federal law).   *See also Ewing v. California,* 538 U.S. 11 (2003)

13  (holding that a sentence of twenty-five-years-to-life for theft under California's three strikes

14  law was not cruel and unusual punishment); Harmelin *v. Michigan,* 501 U.S. 957, 961 (1991)

15  (mandatory sentence of life without possibility of parole for first offense of possession of 672

16  grams of cocaine did not raise inference of gross disproportionality).

17        When reviewing an Eighth Amendment claim in a federal habeas corpus petition, the

18  gross disproportionality principle is "the only relevant clearly established law amenable to the

19  'contrary to' or 'unreasonable application of' framework" under 28 U.S.C. § 2254(d)(1).

20  *Lockyer*, 538 U.S. at 73.   The "gross disproportionality rule" applies "only in the 'exceedingly

21  rare' and 'extreme' case."   *Id.*

22

REPORT AND RECOMMENDATION - 42

01     Petitioner offers no cases that stand for the proposition that a thirty-two-years-to-life

02 sentence for multiple counts of child molestation with multiple victims over an extended

03 period of time is a grossly disproportionate sentence. The California state courts considered

04 the gravity of his offenses and found no "gross disproportionality" between the crimes and the

05 sentence. (*See* Dkt. 28, LD 3 at 27.) *See People v. Bestelmeyer,* 166 Cal.App.3d 520, 529

06 (1985) (imposition of sentence of 129 years upon conviction of multiple sex offenses not

07 cruel or unusual punishment). "In light of the broad deference owed to the California

08 legislature and the lack of any further evidence provided by [petitioner], this Court cannot

09 make the threshold determination that [petitioner's] sentence, compared to the crimes that he

10 committed, leads to an inference of gross proportionality." *Roos v. Runnels*, 2001 WL

11 1563704, *9 (N.D. Cal. 2001) (unpublished). This is not the "extremely rare" case that

12 warrants habeas relief. Because the California state courts' rejection of petitioner's Eighth

13 Amendment claim was neither contrary to, nor an unreasonable application of clearly

14 established U.S. Supreme Court law, I recommend this Court deny petitioner's Eighth

15 Amendment claim.

16     VII.    CERTIFICATE OF APPEALABILITY

17     The federal rules governing habeas cases brought by state prisoners have recently been

18 amended to require a district court that denies a habeas petition to grant or deny a certificate

19 of appealability in the ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C.

20 § 2254 (effective December 1, 2009).

21     A petitioner seeking post-conviction relief under § 2254 may appeal a district court's

22 dismissal of his federal habeas petition only after obtaining a certificate of appealability from

01   a district or circuit judge.  A judge shall grant a certificate of appealability only where a

02   petitioner has made "a substantial showing of the denial of a constitutional right."  *See* 28

03   U.S.C. § 2253(c)(3).  The certificate must indicate which issues satisfy this standard.  *See id*.

04   § 2253(c)(3).  "Where a district court has rejected the constitutional claims on the merits, the

05   showing required to satisfy § 2253(c) is straightforward: the petitioner must demonstrate that

06   reasonable jurists would find the district court's assessment of the constitutional claims

07   debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 474 (2000).

08          For the reasons set out in the discussion of the merits, above, jurists of reason would

09   not find the result debatable.  Accordingly, I recommend that the Court decline to issue a

10   certificate of appealability.  Petitioner is advised that he may not appeal the denial of a

11   certificate of appealability in this Court.  Rather, he may seek a certificate from the court of

12   appeals under Rule 22 of the Federal Rules of Appellate Procedure.

13          VIII.   CONCLUSION

14          For the reasons set forth above, the California Court of Appeal's decision denying

15   petitioner's claims was not contrary to, or an unreasonable application of, clearly established

16   federal law, or based on an unreasonable determination of facts.  I therefore recommend the

17   Court find that petitioner's constitutional rights were not violated and that petitioner's

18   amended habeas petition (Dkt. 10) be DENIED and this action DISMISSED with prejudice.

19   Furthermore, I recommend the Court decline to issue a certificate of appealability.

20          This Report and Recommendation is submitted to the United States District Judge

21   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14)

22   days after being served with this Report and Recommendation, any party may file written

01   objections with this Court and serve a copy on all parties.  Such a document should be

02   captioned "Objections to Magistrate Judge's Report and Recommendation."  Any response to

03   the objections shall be filed and served within fourteen (14) days after service of the

04   objections.  The parties are advised that failure to file objections within the specified time

05   might waive the right to appeal this Court's Order.  *See Martinez v. Ylst*, 951 F.2d 1153 (9th

06   Cir. 1991).  A proposed order accompanies this Report and Recommendation.

07          DATED this 10th day of May, 2010.

08

09

10                                          _____

11                                          JOHN L. WEINBERG
                                            United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION - 45